[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-11680
_____

D.C. Docket No. 0:10-cv-61997-PCH

MERLE WOOD & ASSOCIATES, INC.,
Florida Corporation,

Plaintiff-Appellant,

versus

TRINITY YACHTS, LLC,
Louisana Limited Liability Company,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 15, 2013)

Before MARCUS, BLACK and SILER,[*] Circuit Judges.

BLACK, Circuit Judge:

Merle Wood & Associates (Merle Wood), a yacht-broker, appeals the district court's grant of summary judgment in favor of Trinity Yachts, LLC (Trinity), a manufacturer and seller of yachts.  We affirm.[1]

## I.  BACKGROUND

On September 8, 2010, Merle Wood sued Trinity for, among other things, quantum meruit and unjust enrichment.[2]  Merle Wood alleged that Trinity refused to pay for the fair, reasonable value of the benefit Merle Wood provided in brokering a deal that led to Trinity selling two multi-million dollar yachts.  Trinity denied that Merle Wood brokered the deal, and refused to pay it anything more than a one-time $150,000 "referral fee," which it did in December 2004.

On summary judgment, the district court concluded that Merle Wood's claims for quantum meruit and unjust enrichment were time-barred under the applicable statute of limitations, Fla. Stat. § 95.11, because they accrued prior to

---

[*] Honorable Eugene E. Siler, Jr., United States Circuit Judge for the Sixth Circuit, sitting by designation.

[1] We review the grant of a summary judgment motion de novo, and "may affirm a decision of the district court on any ground supported by the record." *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1234 (11th Cir. 2010).

[2] Merle Wood filed its original Complaint in Florida state court.  Trinity successfully removed the case under 28 U.S.C. § 1441 to the United States District Court for the Southern District of Florida on October 18, 2010.

September 8, 2006, more than four years before Merle Wood filed its complaint.[3]
*See Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 857 F. Supp. 2d 1294,
1310–11 (S.D. Fla. 2012).  Specifically, the district court found that Merle Wood's
causes of action accrued when it "conferred a benefit upon" Trinity, which
occurred, at the earliest, when Trinity and the client "executed a purchase
agreement" and, at the latest, "when the first payment by the buyer to the seller
[was] made."  *Id.*  Because it was "undisputed that the contracts between [the
client] and Trinity for both . . . yachts were signed and first payment was made, in
each case, before September 8, 2006," the district court held Merle Wood's causes
of action were time-barred.  *Id.* at 1311.

Merle Wood disputes the district court's conclusions.  Merle Wood
acknowledges that for the first yacht the purchase agreement was executed and the
first payment of $ 3.6 million was made in November 2003.  Merle Wood further
concedes that for the second yacht the purchase agreement was executed in April
2006, and the first payment of $100,000 was made in August 2006.  Nonetheless,
Merle Wood argues that its claims as to the first yacht did not accrue until
approximately September 22, 2006, when Trinity delivered the yacht to the client
and received the full purchase price.  Merle Wood argues that its claims relating to

---

[3] It is undisputed that four years is the applicable limitations period as Merle Wood's claims involve a "legal or equitable action on a contract, obligation, or liability not founded on a written instrument," Fla. Stat. § 95.11(3)(k), or in the alternative an "action not specifically provided for in these statutes," *id.* § 95.11(3)(p).

3

the second yacht did not accrue until the client made each installment payment on the yacht and "each partial payment" of Merle Wood's commission "became due." Although Merle Wood does not specify the precise dates on which it was entitled to those partial payments, it assures us they occurred after September 8, 2006.

## II.  THE STATUTE OF LIMITATIONS

The central issue on appeal concerns the precise point at which the statute of limitations began to run on Merle Wood's quantum meruit and unjust enrichment claims.  Under Florida law, the four-year limitations period began when Merle Wood's "cause[s] of action accrue[d]"—that is, "when the last element constituting the cause[s] of action occur[red]."  *See* Fla. Stat. § 95.031(1).  More precisely framed, this case turns on when "the last element" of Merle Wood's quantum meruit and unjust enrichment claims occurred.

Florida law prescribes four elements for quantum meruit and unjust enrichment claims.  *See Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So. 2d 383, 386 (Fla. 4th DCA 1997) (en banc); *see also Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1194 (11th Cir. 2009) (reciting the elements of quantum meruit under Florida law).  First, the plaintiff must have conferred "a benefit on the defendant." *Commerce P'ship*, 695 So. 2d at 386.  Second, the defendant must have "knowledge of the benefit." *Id.*  Third, the defendant must have "accepted or retained the benefit conferred." *Id.*  Fourth, the circumstances

4

must be such that "it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Id.*

Of these four elements, the only one at issue is the first; we need only decide when Merle Wood conferred "a benefit" on Trinity. In answering that question, we look first to Merle Wood's pleadings. According to Merle Wood's Third Amended Complaint,[4] it "conferred a benefit on Trinity by introducing" the parties "[i]n or about 2004." Pl.'s Third Am. Compl. ¶ 43. Merle Wood reiterates this allegation four separate times in its Complaint, once for each of its four equitable causes of action premised on quantum meruit or unjust enrichment. *See id.* ¶¶ 36–37, 43, 58–59, 65. Moreover, when asked at oral argument, counsel for Merle Wood could not identify in the pleadings any other alleged benefit, conceding that "the benefit [wa]s the introduction" in 2004. By its own admission, then, Merle Wood "conferred a benefit" on Trinity—and thus triggered the statute of limitations—more than four years prior to filing its complaint on September 8, 2010.

On this ground alone, Trinity was entitled to summary judgment. Plaintiffs are the masters of their claims. The relevant "benefit" is the one Merle Wood itself claims to have conferred in its complaint—not those it now asserts on appeal to

---

[4] After the district court entered its order, this Court granted Merle Wood's unopposed motion for leave to file a Third Amended Complaint to remedy the deficient jurisdictional allegations in its Second Amended Complaint. Aside from those changes, Merle Wood's Second and Third Amended Complaints are identical as they relate to the issues being appealed.

5

avoid the statute of limitations.  To be sure, the purpose of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial."  *Camp Creek Hospitality Inns, Inc. v. Sheraton Franchise Corp.*, 139 F.3d 1396, 1400 (11th Cir. 1998) (internal quotation marks omitted).  But, because "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment," *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004), we do not simply ignore the allegations in the complaint, *see Flintlock Const. Servs., LLC v. Well-Come Holdings, LLC*, --- F.3d ---, Nos. 11-13275 & 11-14885, 2013 WL 673156, at *4–5 (11th Cir. Feb. 26, 2013).  When, as here, a plaintiff has been afforded ample opportunity to amend its complaint and has nonetheless repeatedly asserted time-barred claims,[5] no amount of proof at trial or argumentation in a brief can create a genuine issue of material fact.  *Cf. id.*

---

[5] As to when the "benefit" was conferred, Merle Wood's Third Amended Complaint merely reiterates the allegations in its initial state court Complaint filed on September 8, 2010, as well as its First and Second Amended Complaints in federal court.  *Compare* Pl.'s Third Am. Compl. ¶¶ 36–37, 43, 58–59, 65, *with* Pl's. Compl. ¶¶ 30–31, 37, *and* First Am. Compl. ¶¶ 34–35, 41, 48–49, 55, *and* Second Am. Compl. ¶¶ 35–36, 42, 57–58, 64.  All of Merle Wood's pleadings repeatedly allege, in one form or another, that it "provided a benefit in the form of services expressly accepted by Trinity" when it "introduced [the client] to Trinity" "[i]n or about 2004."  *See, e.g.*, Pl's. Compl. ¶ 30–31 ("In or about 2004, MWA introduced [the client] as a buyer of a new yacht to Trinity. . . . In doing so, MWA provided a benefit in the form of services expressly accepted by Trinity."); *id.* ¶ 37 ("In or about 2004, MWA conferred a benefit on Trinity by introducing [the client] to Trinity as a buyer of a new build yacht."); *see also* First Am. Compl. ¶¶ 34–35, 48–49 ("In or about 2004, MWA introduced [the client] to Trinity as a buyer of new build yachts. . . . In making this introduction, MWA provided a benefit in the form of services expressly accepted by Trinity."); *id.* ¶¶ 41, 55 ("In or about 2004, MWA conferred a benefit on Trinity by introducing [the client] to Trinity as a buyer of new build yachts."); Second Am. Compl. ¶¶ 35–36, 42, 57–58, 64 (same); Third Am. Compl. ¶¶ 36–37, 43, 58–59, 65 (same).

The allegations in its complaint notwithstanding, Merle Wood persists in arguing on appeal that its causes of action are not time-barred on the theory that "the benefit [it] conferred" on Trinity was "delayed significantly beyond the time of the services being performed." Specifically, Merle Wood claims its causes of action relating to the first yacht did not accrue until Trinity delivered the yacht to the client in late 2006. Prior to that point, the client could have walked away from the deal, in which case Trinity would have received no "benefit" and Merle Wood would not have been paid its commission. In other words, because the ultimate value of its services was contingent on future events, Merle Wood claims its cause of action did not accrue at the time its services were performed.[6] As to the second yacht, Merle Wood contends its causes of action did not accrue until the client made each installment payment toward the final purchase price. Merle Wood

---

[6] In support of this argument, Merle Wood relies heavily on *Barbara G. Banks, P.A. v. Thomas D. Lardin, P.A.*, 938 So. 2d 571 (Fla. 4th DCA 2006). In *Banks*, a Florida appeals court held that the benefit of a fee-sharing agreement had not been conferred on the defendant-lawyer until he obtained attorney's fees in a particular case. *Id.* at 575–77. *Banks*, however, is factually distinguishable and Merle Wood's reliance on it is misplaced. Unlike this case, the only legally cognizable benefit in *Banks* was a single, lump-sum payment of post-verdict contingency fees. *See id.* at 573–77; *cf. Rosenberg v. Levin*, 409 So. 2d 1016, 1021–22 (Fla. 1982) (holding that an attorney's cause of action for quantum meruit "in contingency fee cases" involves unique and sensitive concerns due to the client's interests, and therefore does not arise until "the successful occurrence of the contingency"). Contrary to Merle Wood's assertions, *Banks* does not hold that in all cases only final, complete payment to the defendant is sufficient to confer "a benefit" for purposes of quantum meruit or unjust enrichment.

Indeed, to the extent *Banks* is relevant in this case, it undermines rather than supports Merle Wood's position. Merle Wood argues *Banks* stands for the proposition that quantum meruit or unjust enrichment claims do not accrue until the defendant is "actually paid." If so, *Banks*'s condition was met in this case prior to September 8, 2006, as the client *actually paid* Trinity a $3.6 million down payment on the first yacht in November 2003, and a $100,000 down payment on the second yacht in August 2006.

7

argues it was to be paid its commission on the second yacht in successive pro rata installments as Trinity received payments. Under this theory, a new and different limitations period would commence upon each incremental commission payment becoming due.

Aside from being squarely contradicted by its own complaint, Merle Wood's contentions are inconsistent with Florida law. Under Florida law, a benefit is conferred for purposes of quantum meruit when the plaintiff performs his services, even if it is uncertain when—or whether—the defendant will enjoy the ultimate value of those services. *See Matthews v. Matthews*, 222 So. 2d 282, 283–86 (Fla. 2d DCA 1969). In *Matthews*, the plaintiff funneled personal assets into a family corporation so that "at some indefinite time in the future 'when the market would be right'" the participating family members could wind-up the corporation and distribute its assets. *Id.* at 285. Plaintiff's distrust of his family, however, caused him to stop transferring assets to the corporation in 1948, and in 1957 he sued for quantum meruit. *See id.* at 285–86. The Florida court rejected his claim as time-barred, reasoning that the limitations period began when he ceased providing benefits to the corporation in 1948. *Id.* at 286.

Merle Wood's claim is inconsistent with the logic of *Matthews*. In *Matthews*, as here, the benefit's ultimate value would not have been realized until after the commencement of the limitations period—that is, not until the

8

corporation's assets were distributed among its shareholders.  *See id.* at 283–86.  Moreover, in *Matthews*, as here, the ultimate value of the benefit was contingent on future circumstances.  *See id.*  For instance, market forces could have rendered Matthews's transferred assets worthless, in which case his estranged family members would have received no ultimate monetary gain from his services.  The *Matthews* court, however, did not speculate as to the timing or existence of future benefits, but rather applied the well-settled rule that "in quantum meruit . . . the cause of action accrue[s] when the services have been performed."  *Id.* at 286.  Merle Wood's argument, therefore, is inconsistent with *Matthews*.

Also, *Matthews*'s rule that a claim for quantum meruit or unjust enrichment accrues when the services are provided applies regardless of whether the plaintiff claims an entitlement to pro rata commission payments.  *See Moneyhun v. Vital Indus., Inc.*, 611 So. 2d 1316, 1322 (Fla. 1st DCA 1993).  In *Moneyhun*, a plaintiff claimed that, in exchange for his consulting services, he was promised a five-percent commission on each unit of the defendant's product sold between November 1, 1980, and October 28, 1986.  *Id.* at 1318.  In April 1990, nearly five years after his termination in August 1985, the plaintiff sued the defendant in quantum meruit.  *Id.* at 1319.  Florida's First District Court of Appeal held that the claim was time-barred; an action for quantum meruit, the court stressed, "involves the recovery of the value of services performed, and any services Moneyhun was

9

performing for Vital ceased when he left the company in August 1985." *Id.* at 1322.

As with *Matthews*, Merle Wood's arguments are in direct conflict with *Moneyhun*. The court in *Moneyhun* set the accrual date when the services were performed despite the plaintiff's allegation he was to be paid in pro rata installments—installments contingent on third-party buyers who may or may not have paid the defendant the final sale price for the products. *See id.* at 1318–22. If Merle Wood's theory were correct, *Moneyhun* would have been decided differently; the plaintiff's cause of action would not have accrued when he performed his services, but rather a new limitations period would have commenced when each individual five-percent commission payment became due.

In sum, *Matthews* and *Moneyhun* foreclose Merle Wood's effort to circumvent Florida's statute of limitations.

## III.  CONCLUSION

Merle Wood's quantum meruit and unjust enrichment causes of action are time-barred under Fla. Stat. § 95.11. Deciding only the question presented by the facts of this case,[7] which includes Merle Wood's repeated allegations that it "conferred a benefit on" Trinity by introducing the parties, we hold Merle Wood's

---

[7] Because it is unnecessary to the resolution of this appeal, our decision does not address when, in all cases, third-party brokers confer a benefit on sellers for purposes of quantum meruit or unjust enrichment under Florida law.

10

causes of action accrued and the statute of limitations commenced "[i]n or about 2004." Because any date in 2004 is unquestionably more than four years prior to September 8, 2010, Florida's statute of limitations bars Merle Wood's claims. The district court's grant of summary judgment in favor of Trinity is **AFFIRMED.**