[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11458

_____

CANDACE HENSLEY,
TIMOTHY HENSLEY,

Plaintiffs-Appellants,

*versus*

HARTFORD CASUALTY INSURANCE COMPANY,

Intervenor Plaintiff,

WESTIN HOTEL,
a foreign profit corporation domesticated to
conduct business in the State of Georgia a
subsidiary of Marriot International, Inc.,
WESTIN HOTEL MANAGEMENT, L.P.,
a foreign profit Limited Partnership domesticated

to conduct business in the State of Georgia,
MERRITT HOSPITALITY, LLC,
a foreign profit Limited liability company domesticated
to conduct business in the State of Georgia, Marriott
International, Inc., a foreign profit corporation
domesticated to conduct business in the State of Georgia,
MARRIOTT INTERNATIONAL INC.,

                                        Defendants-Appellees.

                    _____

                Appeal from the United States District Court
                    for the Northern District of Georgia
                    D.C. Docket No. 1:19-cv-03846-SDG

                    _____

Before JILL PRYOR, BRANCH, and ED CARNES, Circuit Judges.

BRANCH, Circuit Judge:

        This case arises out of injuries that Candace Hensley sustained in a trip and fall accident while staying at a Westin Hotel in Indianapolis, Indiana.  The Hensleys initiated suit in state court in Georgia and the defendants removed the case from state court to federal court based on diversity jurisdiction.  Hartford Casualty Insurance Company paid workers' compensation benefits to Mrs. Hensley and intervened in this lawsuit to protect its subrogation lien.  Applying Indiana tort law, the district court ultimately

granted summary judgment in favor of defendants because the defendants either did not exercise the requisite control over the hotel premises or did not have actual knowledge that the curb Hensley tripped over presented an unreasonable risk of injury. The Hensleys appeal that decision.

We do not reach the merits of the district court's summary judgment order, however, because the district court was divested of subject matter jurisdiction when Hartford, an indispensable party, intervened as a matter of right and destroyed complete diversity of citizenship amongst the parties. Accordingly, after careful review and with the benefit of oral argument, we vacate the district court's summary judgment order and remand to the district court with instructions to remand this case back to state court.

## I.    Background

On May 2, 2017, Candace Hensley was on a business trip and staying at the Westin Hotel in Indianapolis, Indiana, when she tripped and fell over an uneven rise in the concrete. Mrs. Hensley alleged that she suffered serious injuries as a result of this incident, including brain damage. Based on this incident, on April 29, 2019, she and her husband filed suit in the State Court of Gwinnett County, Georgia, against Westin Hotel and Westin Hotel Management, L.P. ("WHM") bringing two causes of action: a negligence claim and a loss of consortium claim.

On May 28, Merritt Hospitality, LLC ("Merritt") and WHM jointly filed an answer and special appearance, asserting that Merritt was "erroneously named and sued as 'Westin Hotel, a

subsidiary of Marriott International, Inc.'" and that "Westin Hotel [wa]s not a legal entity subject to suit[.]"  On July 17, without seeking leave of the state court, the Hensleys filed an amended complaint adding Merritt and Marriott International, Inc. as defendants.[1]  Shortly thereafter, Merritt removed the case to the United States District Court for the Northern District of Georgia, invoking the federal court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1).

As litigation progressed in the district court, Hartford filed a motion to intervene as of right pursuant to O.C.G.A. § 9-11-24(a).[2]

---

[1] The parties dispute whether Merritt and Marriott were properly added as defendants.  However, prior to summary judgment, neither Merritt nor Marriott moved to dismiss the claims against them based on this argument and they continued to participate throughout all stages of the litigation.  The district court did not rule that they had been improperly added until it issued its summary judgment order, which, as discussed above, was well after it was divested of subject matter jurisdiction.  Thus, at the time of Hartford's intervention, Merritt, a Connecticut citizen, was a party to this litigation.

[2] O.C.G.A. § 9-11-24(a) states:

*Intervention of right.*  Upon timely application anyone shall be permitted to intervene in an action:

(1) When a statute confers an unconditional right to intervene; or

(2) When the applicant claims an interest relating to the property or transaction which is the subject matter of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

22-11458                Opinion of the Court                5

Hartford asserted that its right to intervene stemmed from O.C.G.A. § 34-9-11.1(b),[3] which gave it a subrogation lien against any recovery Mrs. Hensley could obtain in her lawsuit equivalent to the amount of workers' compensation benefits that it had provided to Mrs. Hensley following the incident.  No party opposed Hartford's request to intervene as of right and the district court entered an order granting Hartford's motion, determining that "Hartford ha[d] an unconditional right to intervene in this action" and "claim[ed] an interest in the property which is the subject matter of this action and that it is so situated that the disposition of this action may, as a practical matter, impede or impair its ability to protect that interest which is not adequately represented by the existing parties."  As relevant here, neither the

---

[3] O.C.G.A. § 34-9-11.1(b) provides:

In the event an employee has a right of action against such other person as contemplated in subsection (a) of this Code and the employer's liability under this chapter has been fully or partially paid, then the employer or such employer's insurer shall have a subrogation lien, not to exceed the actual amount of compensation paid pursuant to this chapter, against such recovery.  The employer or insurer may intervene in any action to protect and enforce such lien.  However, the employer's or insurer's recovery under this Code shall be limited to the recovery of the amount of disability benefits, death benefits, and medical expenses paid under this chapter and shall only be recoverable if the injured employee has been fully and completely compensated, taking into consideration both the benefits received under this chapter and the amount of the recovery in the third-party claim, for all economic and noneconomic losses incurred as a result of the injury.

court nor any party inquired into Hartford's citizenship to determine whether its intervention would destroy complete diversity between the parties. Hartford subsequently filed an intervenor complaint against Westin Hotel, WHM, Merritt, and Marriott for the $119,076.81 in workers' compensation benefits it had paid to Mrs. Hensley.

After the close of discovery, Merritt, WHM, and Marriott filed motions for summary judgment. When the motions were fully briefed, the district court granted summary judgment in favor of Merritt, WHM, and Marriott.[4] And because Hartford's intervenor complaint depended on the Hensleys succeeding on their claims, the district court dismissed Hartford's claim with prejudice. The Hensleys timely appealed the district court's entry of judgment.

---

[4] Applying Indiana tort law, the district court determined that there was no genuine dispute as to the dispositive question of whether WHM and Marriott controlled the hotel's premises because a License Agreement between the owner of the hotel and WHM established that neither WHM nor Marriott controlled the premises. Thus, it determined WHM and Marriott were entitled to summary judgment. With respect to Merritt, the district court determined that the record established Merritt had neither constructive nor actual knowledge that the curb Mrs. Hensley tripped over posed a foreseeable danger and therefore Merritt was likewise entitled to summary judgment under Indiana law. The district court also dismissed Westin Hotel because it was not a legal entity subject to suit. Because we conclude that the district court lacked subject matter jurisdiction when it entered its summary judgment order, we express no views on the merits of its summary judgment determinations.

On appeal, however, we issued jurisdictional questions to the parties, asking them to address, *inter alia*, whether the relevant pleadings sufficiently alleged each party's citizenship so as to invoke the district court's diversity jurisdiction in the first instance. After responding to our jurisdictional inquiry, the Hensleys filed a motion to amend their pleadings or alternatively to remand the case to the district court. We granted the request and remanded "to the district court for the limited purpose of determining the citizenship of all parties (Plaintiffs, Intervenor Plaintiff, and Defendants) and whether diversity jurisdiction existed at the time of removal and continued throughout the proceedings."

On limited remand, the district court gathered evidence and determined that it had diversity jurisdiction at the time of removal, but that diversity jurisdiction was destroyed when Hartford intervened because both Hartford and Merritt were citizens of Connecticut. The district court requested that we vacate its judgment and remand to the district court "so that it may vacate its grant of . . . permissive intervention [to Hartford], dismiss Hartford from the case, and enter summary judgment against [the Hensleys]." After the district court entered its findings, we issued a second set of jurisdictional questions to the parties, regarding whether Hartford intervened as a matter of right; was an indispensable party; and relatedly, whether the district court had jurisdiction to adjudicate Hartford's claims.

## II.    Standard of Review

"[S]ubject matter jurisdiction issues present questions of law that we review de novo, even when [they are] raised for the first time on appeal." *Dupree v. Owens*, 92 F.4th 999, 1004 (11th Cir. 2024) (quotations omitted).  Subject matter jurisdiction can never be waived and "courts have an independent obligation to determine whether subject matter jurisdiction exists, even in the absence of a challenge from any party." *Id.* (quotations omitted).

## III.    Discussion

This appeal requires us to determine whether Hartford had a right to intervene in this lawsuit and, if so, whether it was an indispensable party meaning that its intervention would destroy diversity jurisdiction.

### A.  Subject Matter Jurisdiction Principles

Our analysis begins by first laying out subject matter jurisdiction principles.  "Federal courts are courts of limited subject-matter jurisdiction." *Thermoset Corp. v. Bldg. Materials Corp. of Am.*, 849 F.3d 1313, 1317 (11th Cir. 2017).  "A district court can hear a case only if it has at least one of three types of subject matter jurisdiction: (1) jurisdiction under a specific statutory grant; (2) federal question jurisdiction pursuant to 28 U.S.C. § 1331; or (3) diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)." *Id.* (quotations omitted).  At issue here is diversity jurisdiction under § 1332(a)(1).

Pursuant to 28 U.S.C. § 1332(a)(1), a district court has subject matter jurisdiction over a civil action when the action is between citizens of different states and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a)(1). "Diversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Flintlock Constr. Servs., LLC v. Well-Come Holdings, LLC*, 710 F.3d 1221, 1224 (11th Cir. 2013) (quotations omitted). Thus, when an intervening plaintiff brings a claim against a defendant with whom it shares citizenship, and the only basis for the court's subject matter jurisdiction is diversity of citizenship, the district court lacks jurisdiction over those claims. *See id.* at 1224–25. Such is the case here where Hartford, a citizen of Connecticut, brought an intervenor complaint against Merritt, also a citizen of Connecticut.

We have said that we may "dismiss jurisdictional-spoiling claims" from a non-essential intervening plaintiff to "achieve the orderly and expeditious disposition of cases." *Id.* at 1225 (quotations omitted); *see also Wichita R.R. & Light Co. v. Pub. Utils. Comm'n of the State of Kan.*, 260 U.S. 48, 54 (1922) (noting that jurisdiction is not defeated "by the intervention, by leave of the court, of a party whose presence is not essential to a decision of the controversy between the original parties"). "But, if [Hartford] is entitled to intervene as a matter of right under [Federal] Rule [of Civil Procedure] 24(a)(2) and is an indispensable party under Rule 19(b), the litigation must be dismissed because there would not be complete diversity." *B. Fernandez & Hnos., Inc. v. Kellogg USA, Inc.*, 440 F.3d 541, 544 (1st Cir. 2006); *see Thermoset*, 849 F.3d at 1315,

1319, 1321 (vacating a grant of summary judgment and remanding with instructions to send the case back to state court where one of the defendants was not diverse and was "an indispensable party" under the Rule 19 inquiry, explaining: "because [that defendant] is an indispensable party under Rule 19, we cannot preserve jurisdiction over the rest of the case by dismissing [that defendant]").

   *B. Hartford had a right to intervene in this case.*

   With the above subject matter jurisdiction principles in mind, we now turn to whether Hartford was entitled to intervene as a matter of right under Rule 24(a).  Although all parties agree that Hartford had such a right, we nevertheless analyze this issue because the district court's order on limited remand indicated that its own views had changed and that its grant of Hartford's intervention was permissive and not as of right.  Applying Rule 24(a), we determine that Hartford had a right to intervene.

   Rule 24(a) of the Federal Rules of Civil Procedure provides as follows:

> **Intervention of Right**.  On timely motion, the court must permit anyone to intervene who:
>
>   (1) is given an unconditional right to intervene by a federal statute; or
>
>   (2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may

> as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a).

We agree with the parties that Hartford meets the requirements of Rule 24(a)(2) and thus had a right to intervene in this lawsuit. For starters, there is no indication in the record that Hartford's request to intervene was untimely.[5] As to the 24(a)(2) factors, Hartford clearly has an interest in the potential damages that the Hensleys might recover based on its subrogation lien for providing Mrs. Hensley with $119,076.81 in workers'

---

[5] WHM, Marriott, and Merritt argue as part of the Rule 19 inquiry into indispensability—which we discuss *infra* at 12–15—that "it would be inequitable" to remand this case to state court because Hartford did not move to intervene until twenty months after the Hensleys initiated this lawsuit. However, they admitted at oral argument that they did not know whether there was evidence in the record to indicate when Hartford knew or should have known about this lawsuit, which is when Hartford could have first moved to intervene. *See Comm'r, Ala. Dep't of Corr. v. Advance Loc. Media, LLC*, 918 F.3d 1161, 1171 (11th Cir. 2019) ("Courts consider four factors in assessing timeliness" of intervention including "the length of time during which the would-be intervenor knew or reasonably should have known of his interest in the case before petitioning for leave to intervene[.]"). Furthermore, none of the parties opposed Hartford's intervention in the district court, and thus never argued that such intervention was untimely. Accordingly, we will not consider such an argument for the first time on appeal. *See Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th. Cir. 2004) (noting that we generally will not consider arguments raised for the first time on appeal, particularly when they involve "fact-bound issues").

compensation benefits.   And Georgia courts have interpreted O.C.G.A. § 34-9-11.1 to require insurers to intervene in an employee's suit against an alleged tortfeasor to protect their rights. *See, e.g.*, *Canal Ins. Co. v. Liberty Mut. Ins. Co.*, 570 S.E.2d 60, 63–64 (Ga. Ct. App. 2002).   Accordingly, Hartford needed to intervene if it wanted to protect its rights because the disposition of the action without Hartford's involvement would have foreclosed its ability to protect its subrogation lien.   Finally, all parties agree that the Hensleys cannot adequately protect Hartford's interests as the Hensleys' goal is to maximize their own recovery.   Thus, we conclude that Hartford had a right to intervene in this action under Rule 24(a)(2).

### C.  Hartford is an indispensable party.

The fact that Hartford had a right to intervene does not end our inquiry.   Because Hartford's intervention would destroy complete diversity, we now turn to whether Hartford, after considering issues of equity, is an indispensable party under Rule 19(b).  If so, we are required to vacate the district court's summary judgment order because it was entered after jurisdiction was lost.[6]

---

[6] Given the posture of when the subject matter jurisdiction issue arose—on appeal after the district court entered summary judgment in favor of WHM, Merritt, and Marriott—it is unsurprising that WHM, Merritt, and Marriott argue against vacating the favorable judgment on the basis of Hartford being an indispensable party.   Instead, they argue we should find non-indispensability and dismiss the jurisdictional-spoiling claims to reach the merits of the district court's summary judgment order.   Similarly, it is

*See B. Fernandez*, 440 F.3d at 547.  Upon review of the Rule 19(b) factors, we conclude that Hartford is an indispensable party.

Rule 19(b) of the Federal Rules of Civil Procedure provides:

> **(b)** **When Joinder Is Not Feasible**.  If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:
>
> > **(1)** the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> >
> > **(2)** the extent to which any prejudice could be lessened or avoided by:
> >
> > > **(A)** protective provisions in the judgment;
> > >
> > > **(B)** shaping the relief; or
> > >
> > > **(C)** other measures;
> >
> > **(3)** whether a judgment rendered in the person's absence would be adequate; and
> >
> > **(4)** whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

---

unsurprising that the Hensleys argue that Hartford is an indispensable party requiring vacating the unfavorable judgment and remanding to state court. And none of the parties make any argument that jurisdiction can be saved by realigning Hartford.

Fed. R. Civ. P. 19(b).

While WHM, Merritt, and Marriott concede that the first 19(b) factor favors a finding of indispensability because a judgment rendered in Hartford's absence would impair Hartford's ability to enforce its subrogation lien, they nevertheless argue that the other factors support a finding of non-indispensability. We disagree.

For the sake of completeness, we begin with the first 19(b) factor, the prejudice that Hartford would suffer should a judgment be entered in its absence. We have referred to this first factor as "[t]he primary factor" in the Rule 19(b) analysis. *Laker Airways, Inc. v. Brit. Airways, PLC*, 182 F.3d 843, 848–49 (11th Cir. 1999); *see also In re Wild*, 994 F.3d 1244, 1280 (11th Cir. 2021) (en banc) (Tjoflat, J., concurring) ("The first factor we have outlined in [the Rule 19(b)] consideration . . . is nearly dispositive."). As discussed above, if Hartford were not allowed to intervene and join this action, then under Georgia precedent it would lose its right to enforce its subrogation lien. *Canal Ins. Co.*, 570 S.E.2d at 63–64. Accordingly, as the parties agree, the first factor weighs heavily in favor of a finding that Hartford is an indispensable party.

The remaining factors also favor the conclusion that Hartford is an indispensable party. With respect to the second factor, there is no remedy that could be fashioned to mitigate the prejudice that Hartford would suffer were it not joined. While WHM, Merritt, and Marriott disagree with this conclusion and assert that the Hensleys and Hartford could come to an agreement to preserve Hartford's lien, they conceded at oral argument that

the Hensleys are under no obligation to do so.[7]  Similarly, with respect to the third factor, any judgment entered without Hartford would be inadequate because Hartford would lose the right under Georgia law to enforce its lien.  And the fourth factor clearly weighs in favor of a finding of indispensability because the Hensleys certainly have an adequate remedy—rather than dismissing the case for nonjoinder, this case would be remanded to state court, where the Hensleys initially brought suit and could continue to pursue their claims.  Accordingly, we determine that Hartford is an indispensable party, and thus, the district court lost subject matter jurisdiction over the case once Hartford intervened.[8]

## IV.    Conclusion

For the above reasons, we conclude that Hartford has a right to intervene in this lawsuit under Rule 24(a)(2) and is an indispensable party under Rule 19(b).  And, because Hartford is a citizen of Connecticut and brought an intervenor complaint

---

[7] Indeed, as part of their Rule 24(a)(2) argument, WHM, Merritt, and Marriott admitted that the Hensleys could not adequately protect Hartford's interests. It defies all logic to argue that the Hensleys cannot protect Hartford's interests, while simultaneously arguing that they could do just that by entering into an agreement with Hartford.

[8] Pursuant to 28 U.S.C. § 1367(b), the district court could not exercise supplemental jurisdiction over Hartford's claims against Merritt because "the district courts shall not have supplemental jurisdiction . . . over claims by persons . . . seeking to intervene as plaintiffs under Rule 24 . . . when exercising supplemental jurisdiction over such claims would be inconsistent with the jurisdictional requirements of [28 U.S.C. §] 1332." 28 U.S.C. § 1367(b); *see also* *Flintlock*, 710 F.3d at 1224 n.6.

against another Connecticut citizen, Merritt, the district court lost subject matter jurisdiction over this case when the district court granted Hartford's intervention. Accordingly, we vacate the district court's grant of summary judgment and remand with instructions to remand to the State Court of Gwinnett County, Georgia.

**VACATED AND REMANDED**.